[Cite as *State v. Dennison*, 2013-Ohio-5535.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee/ Cross-Appellant, | : | |
| | : | No. 12AP-718 |
| v. | | (C.P.C. No. 09CR-7310) |
| | : | |
| Albert D. Dennison, aka Arthur D. Dennison, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellant/ Cross-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on December 17, 2013

*Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson,* for appellee/cross- appellant.

*David K. Greer*, for appellant/cross- appellee.

APPEALS from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Arthur D. Dennison ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas convicting him of multiple crimes, including aggravated burglary, aggravated robbery, kidnapping, and having a weapon while under disability, and sentencing him to serve a total of 74 years. For the following reasons, we affirm in part and reverse in part, and remand the case for re-sentencing.

## I. Facts—The Crimes

{¶ 2}   The appellant's crimes arose out of a home invasion on March 15, 2009, on Dering Road in Columbus.  Three men entered the home and demanded to know where to find "the stuff," as well as  money.

{¶ 3}   Four adults, two men and two women, were present in the home, along with a two-year-old child. The three invaders stayed in the home for a period of over one hour, during which time they struck and injured three of the victims, and ordered them to strip naked.  One of the two women was touched in the area of her breasts and genitals. Ultimately, the offenders tied up all four adults in the basement and instructed the victims not to call police.  Various pieces of personal property, including a television, purses, a cell phone, car keys, a laptop, and jewelry, were taken from the house. One of the robbers drove away from the home in a car belonging to one of the victims.  Shortly after the invaders left, the victims were able to free themselves.  They fled to a neighbor's house and then went to the hospital for treatment of their injuries.

## II. Facts—Pretrial Investigation and Litigation, Trial, and Conviction

{¶ 4}   In investigating the incident, police attempted to identify the offenders.  On March 16, 2009, the day after the robbery, one of the victims, C.B., called police and suggested that, after reviewing family photo albums and speaking with members of her family, she suspected that appellant was one of the robbers.  Police prepared a photo array that included appellant's photo and showed it to all four victims.  C.B. identified appellant as one of the robbers.  The other victims could not, however, positively identify appellant's photo as being that of one of the robbers.

{¶ 5}   C.B. remained convinced that appellant had participated in the robbery and, thereafter, on multiple occasions, showed his picture to the other victims. On December 3, 2009, police prepared a second photo array in further investigating the Dering Road robbery and other crimes.  During the December photo array, the second female victim, S.D., positively identified appellant's photo as that of one of the Dering Road robbers.

{¶ 6}   On December 8, 2009, the state formally commenced this criminal prosecution by indicting appellant and charging him with 11 criminal counts based on the March 9, 2009 events at the Dering Road home.  Police arrested appellant on the warrant on indictment.

{¶ 7}   After his indictment, appellant's appointed counsel requested continuances on multiple occasions. Appellant, however, did not agree with all of counsel's continuance requests, and their relationship deteriorated.  Appellant himself signed only two speedy-trial waivers.  Ultimately, in November 2010, appellant's first trial counsel was replaced by a new attorney, who sought additional time to become familiar with the case. Thereafter, the trial was continued multiple times at the request of appellant's second appointed counsel.

{¶ 8}   Some of defense counsel's continuance requests were based on the fact that appellant had engaged in telephone conversations while in jail that had been recorded and which the state considered introducing as evidence at trial.  The state produced the tapes for defense counsel, who then sought additional time to listen to them.

{¶ 9}   Trial commenced on June 11, 2012, approximately two and one-half years after the indictment. Two other suspects in the crime, Paul Keel and James Moore, had also been indicted and charged with crimes occurring in the Dering Road incident.  They both testified that appellant had participated in the robbery; as did the two women who had been victimized in the home during the robbery, C.B. and S.D.

{¶ 10} The jury found appellant guilty of one count of aggravated burglary, four counts of aggravated robbery, and four counts of kidnapping, corresponding to the four victims present in the home.  The jury also found appellant guilty of firearm specifications that had been charged as to each of these nine counts. In addition, the court found appellant guilty of a weapons under disability ("WUD") charge.

{¶ 11} At sentencing, the trial court sentenced appellant to nine years on each of the four aggravated robberies (36 years) and eight years on each of the four kidnappings (32 years), but the court merged the aggravated burglary count.  The court sentenced appellant to three years for the WUD offenses and three years for one of the firearm specifications, of which the jury found appellant guilty. The court ordered the sentences to be served consecutively, resulting in a total sentence of 74 years.

## III.  Assignments of Error

{¶ 12} Appellant timely appealed from his conviction, raising five assignments of error, as follows:

[1.] Appellant was denied his statutory right to a speedy trial, and speedy trial rights under the Sixth Amendment of the U.S. Constitution, and Ohio Constitution.

[2.] The trial court's hostility toward defense counsel, resulting in disparate treatment between counsel and prosecutors, and/or partiality toward the prosecution, was structural error, denying appellant due process of law.

[3.] The trial court denied appellant due process of law and a fair trial under the U.S. constitution by permitting the victims to identify him in court, identifications which were not sufficiently reliable.

[4.] Appellant was denied his right of confrontation under the Sixth Amendment of the U.S. Constitution, and the Ohio Constitution, when the trial court permitted the playing of a tape of Cassie Siegel's accusatory hearsay statements.

[5.] Prosecutors engaged in misconduct by commenting on Cassie Siegel's statement to the jury, despite an earlier limiting instruction from the court, denying appellant the constitutional right to a fair trial.

[6.] Any probative value to the jail recordings was substantially outweighed by the danger of unfair prejudice.

{¶ 13} The state has cross-appealed, asserting the following two cross-assignments of error:

[1.] The trial court erred in merging the aggravated burglary count.

[2.] The trial court erred in failing to impose at least two three-year firearm terms and in failing [to] exercise its discretion to determine whether to impose additional three-year firearm terms.

## IV. Analysis—Appeal

### A. Alleged error—Speedy Trial

{¶ 14} In his first assignment of error, appellant argues that he was denied his statutory right to a speedy trial and his constitutional speedy-trial rights under the Sixth Amendment to the U.S. Constitution and Ohio Constitution, Article I, Section 10.

{¶ 15} We first address the question of whether appellant was denied his statutory right to a speedy trial provided by R.C. 2945.71. We have summarized the relevant portions of that statute, as follows:

> " 'Under R.C. 2945.71(C)(2), the state is required to bring a defendant to trial on felony charges within 270 days of arrest. Each day that the defendant is held in jail in lieu of bail counts as three days in computing this time. R.C. 2945.71(E). The time may be tolled by certain events delineated in R.C. 2945.72(E) and (H), including continuances granted as a result of defense motions and any reasonable continuance granted other than upon the request of the accused.' "

*State v. Brime*, 10th Dist. No. 09AP-491, 2009-Ohio-6572, ¶ 11, quoting *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 31-32.

{¶ 16} We note that appellant has not specifically calculated the number of days that he believes are countable so as to exceed the 90-day speedy-trial time, other than to assert that 47 speedy-trial days had been tolled between his arrest and March 1, 2010. He instead generally asserts that the continuances sought by his counsel should not be charged to him because he did not acquiesce to them but, rather, repeatedly and openly objected to them. Because appellant has addressed the speedy-trial issue generally, we also discuss it generally. We conclude that his argument lacks merit.

{¶ 17} We rejected a similar argument in *Brime*. The speedy-trial statute provides that the time within which an accused must be brought to trial is extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H). In *Brime*, we followed precedent established by the Supreme Court of Ohio that " '[a] defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent.' " *Brime* at ¶ 17, quoting *State v. McBreen*, 54 Ohio St.2d 315 (1978), syllabus, and *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 36. Accordingly, defense counsel may "validly waive defendant's right to a speedy trial without his consent." *Id.* We have repeatedly followed this precedent. *See also State v. Pilgrim*, 10th Dist. No. 08AP-993, 2009-Ohio-5357, ¶ 43 ("[a]lthough defendant did not personally agree to a continuance or waive his right to

[a] speedy trial for that period of time, his attorney did so on his behalf"); *State v. Glass*, 10th Dist. No. 10AP-558, 2011-Ohio-6287, ¶ 17 ("It is well-established that a defendant is bound by the actions of counsel in waiving speedy-trial rights by seeking or agreeing to a continuance, even over the defendant's objections."); *State v. Matthews*, 1st Dist. No. C-060669, 2007-Ohio-4881, ¶ 30 (despite defendant's contention he did not sign any of the entries granting continuances and did not agree to the continuances, defense counsel's waiver "binds the defendant even if it was executed without the defendant's consent").

{¶ 18} Moreover, the fact that appellant repeatedly submitted his own pro se filings objecting to his appointed counsel's multiple continuance requests does not warrant a contrary finding. *Accord Brime* at ¶ 19 (citing *State v. West*, 3d Dist. No. 2-06-04, 2006-Ohio-5834, ¶ 30, for the proposition that a trial court does not have to permit such "hybrid representation" whereby a defendant, despite being represented by counsel, seeks to submit his own personal filing disclaiming any speedy-trial waivers; and *State v. Kroesen*, 10th Dist. No. 00AP-48 (Nov. 16, 2000), holding that speedy-trial time was tolled as a result of counsel's requests for continuances despite the defendant's own pro se filings objecting to continuances and refusals to sign speedy-trial waivers).

{¶ 19} We acknowledge that, under R.C. 2945.72(H), continuances granted at the state's request must be reasonable in order to extend statutory speedy-trial time. We need not, however, inquire into the reasonableness of a continuance granted at the request of defense counsel, as the statute provides that "[t]he period of *any* continuance granted on the accused's own motion" extends speedy-trial time. (Emphasis added.) The statute, by its own terms, imposes a reasonableness requirement only when continuances have been requested by the state. Moreover, it is well-established that continuances granted on joint motions of both the state and the defense toll the statute, and the only continuances that must be reasonable in order to toll the statutory time limits are those requested by the state or sua sponte ordered by the trial court. *Glass* at ¶ 16; *State v. McQueen*, 10th Dist. No. 09AP-195, 2009-Ohio-6272, ¶ 45.

{¶ 20} A defendant's request for discovery is a tolling event pursuant to R.C. 2945.71(E). *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, ¶ 18. In this case, appellant's counsel requested discovery on December 16, 2009, tolling the speedy-trial statute until discovery was provided on January 5, 2010. But defense counsel joined in a

motion for a continuance on February 6, 2010, at a time well within the 90-day speedy-trial period. From that point forward, the record reflects that appellant's counsel requested, or joined, in each and every continuance granted by the court. Accordingly, the trial occurred well within the 90-day speedy-trial timeframe.

{¶ 21} Appellant argues that a period of time passed over spring and summer of 2011 which, in and of itself, exhausted the 90-day speedy-trial period. The record reflects that, on March 3, 2011, the court scheduled trial for June 16, 2011. At an April 18, 2011 hearing, the court observed that appellant had, in a pro se filing, asked the court to investigate the prosecutors in the case for ethical violations. The trial court judge found that the filing included statements suggesting that the judge himself might also have "done something that the [appellant] feels is inappropriate" and accusing the judge of being "in conspiracy with the State to deny the [appellant] of his rights." (Apr. 18, 2011 Tr., 108.) The court stated for the record that appellant had previously filed a disciplinary complaint against the judge, which had been summarily dismissed. Rather than recusing himself, however, the judge determined that he would stay matters, including a hearing on a motion to suppress evidence that the defense had filed on that date, pending the filing in the Supreme Court of Ohio of an affidavit of disqualification to disqualify him from the case. Appellant argues that the court "actually *ordered* defense counsel to file the affidavit of disqualification against him," (emphasis sic) (Appellant's Reply Brief, 7), and the record does reflect that the trial court stated that it would not rule on his motion to suppress "until the resolution of the Supreme Court complaint." (Apr. 18 Tr., 115. )

{¶ 22} Construing these facts most favorably to appellant—which we do only for analytical purposes—the trial court's order arguably imposed a sua sponte continuance for speedy-trial purposes. A sua sponte continuance ordered by the court must be reasonable in light of its necessity or purpose in order to toll statutory speedy-trial time. *McQueen* at ¶ 45.

{¶ 23} In this case, the court ordered the filing of an affidavit of disqualification on April 18, 2011.[1] Defense counsel did not, however, file an affidavit of disqualification until

---

[1] See Ohio Constitution, Article IV, Section 5, paragraph (C), authorizing the Chief Justice of the Supreme Court to "pass upon the disqualification of any judge of the courts of appeals or courts of common pleas," and authorizing rules to "provide for the hearing of disqualification matters."

September 6, 2011. In the interim, on May 26, 2011, and despite its previous statement that it was staying the matter, the court conducted a status hearing at which it reiterated that the case was set for trial for June 13, 2011, and inquired as to the status of the filing of an affidavit of disqualification. Defense counsel represented that he had not yet filed that affidavit and was waiting for preparation of transcripts of prior hearings in the case before filing the affidavit. On that same day, May 26, 2011, defense counsel again filed a request for a continuance, representing that he needed the time to file an affidavit of disqualification. The trial court set a new trial date of August 15, 2011.

{¶ 24} On August 15, 2011, defense counsel again asked for a continuance, asserting that he still had not filed the affidavit. The court continued the trial until September 16, 2011. Defense counsel ultimately filed the affidavit of disqualification on September 6, 2011. On September 7, 2011, Chief Justice O'Connor denied appellant's motion to disqualify the judge.

{¶ 25} On the basis of these events, appellant contends that the time between April 18 and September 6, 2011, should be charged against the state for speedy-trial purposes. He contended at oral argument that "the whole summer" went by as a result of the trial court's insistence that his impartiality be considered by the Chief Justice as a consequence of the filing of a motion for disqualification.

{¶ 26} But appellant's argument is rebutted by the fact that appellant did not, nor does he now, challenge the authority of the trial judge to have ordered the filing of an affidavit seeking his own disqualification—a legal issue we therefore need not address.[2] Rather, the vast majority of delay of the trial between April 18 and September 16, 2011 occurred not as the result of the issuance of the court's order but, rather, as the result of the tardiness of defense counsel in complying with the order. We note that the Chief Justice resolved the disqualification request in favor of the trial judge the day after the affidavit was filed. Moreover, during this period of time, the court extended the trial date during the time in question only at the express request of defense counsel.

---

[2] Although it is unusual that a trial judge would direct the filing of an affidavit of disqualification, we find to be reasonable, in the interest of justice and judicial economy, his desire to settle the issue before continuing to preside over a case which had commenced eighteen months prior, involved eleven serious criminal charges, four victims, two defense attorneys, and multiple continuances.

{¶ 27} Appellant's justification for delaying the filing of the affidavit of disqualification was that he was waiting for the preparation of transcripts of prior court hearings in appellant's case. But R.C. 2701.03 establishes the procedure for the filing of affidavits of disqualification. R.C. 2701.03(B)(1) requires that an affiant include in his affidavit "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations." It does not require that the affiant attach transcripts.

{¶ 28} Transcripts may, of course, be submitted as evidence in support of an affidavit of disqualification. *In re Disqualification of Spon,* 134 Ohio St.3d 1254, 2012-Ohio-6345, ¶ 36. An affiant is, however, obliged to file an affidavit of disqualification "as soon as possible after affiant becomes aware of circumstances that support disqualification." *Id.* at ¶ 34. In view of the requirement to act promptly in filing affidavits of disqualification, appellant should have filed an affidavit of disqualification as soon as possible after having been prompted to do so by Judge Holbrook. He could have simultaneously sought leave of the Supreme Court of Ohio to allow him to supplement the affidavit once the transcripts had been prepared. See *In re Disqualification of Forchione*, 134 Ohio St.3d 1235, 2012-Ohio-6303, ¶ 12-14 (observing that Supreme Court of Ohio had granted leave to amend an affidavit of disqualification within 30 days to allow time for affiant to review the transcripts of hearings that had been held several days prior to the filing of the affidavit).

{¶ 29} Moreover, in denying appellant's motion for disqualification, Chief Justice O'Connor observed that appellant had attached transcript pages to the affidavit but had not " 'outlined' any transcript pages or otherwise identified any statements made by Judge Holbrook during the hearings in question." (Sept. 9, 2011 Entry, *State v. Dennison*, Supreme Court case No. 11-AP-095, 3.) The Chief Justice further observed that "it is not this court's duty to sift through transcript pages for evidence to support an affiants' disqualification request." The fact that it took the court reporter five months to prepare the transcripts does not appear to justify appellant's delay in filing the affidavit in view of the fact that appellant ultimately failed to specifically identify in his affidavit of disqualification any portions of the transcript. In light of all of the foregoing circumstances, we refuse to charge the time at issue to the state in this case. The delay in

filing the affidavit of disqualification was caused primarily by defense counsel's own failure to act promptly—not as the result of an unreasonable sua sponte trial court continuance.

{¶ 30} Appellant additionally argues that his defense counsel was effectively forced to request continuances as a result of the state's repeated disclosure of new jail phone call audiotapes recorded during the long period that appellant was in jail awaiting trial. He suggests that the state's production of those tapes as discovery necessarily required defense counsel to review them, necessitating additional continuance requests by defense counsel. But the trial court advised appellant in open court on several occasions that he should be wary of talking to others on the jail telephone, and each of the telephone conversations was preceded by a recorded advisory that the conversation that followed would be recorded. Moreover, the tapes used by the prosecution at trial were recorded between December 9, 2009 and April 5, 2010, i.e., within the first four months after his arrest and incarceration. Accordingly, the delay of appellant's trial past April 5, 2010, did not produce any inculpatory audiotapes that were used against appellant, rebutting any inference of resulting prejudice. Indeed, appellant argues that he was most prejudiced by a phone conversation between appellant and his girlfriend that took place on February 19, 2010—less than three months after his arrest.

{¶ 31} Nor do we find merit in appellant's argument that the state itself caused the trial to be delayed for the purpose of providing time in which the appellant might create additional self-incriminating evidence that the state could then use against him at trial. It is true that the longer appellant remained in jail prior to trial, the more phone calls he made and that the state continued to monitor and record those calls, which it then provided to defense counsel. However, as discussed previously, the long duration of appellant's pretrial incarceration was primarily the result of defense counsel's actions and requests for continuances for reasons other than defense counsel's asserted need for additional time to review those phone calls. *See*, e.g, March 3, 2011 defense request for continuance based on need for "more time to prepare and [because] investigator is working on research." (Mar. 3. 2011 Entry.) Moreover, the phone calls that the state did use at trial all occurred within the first several months of appellant's incarceration. In addition, we note that defense counsel did not file a motion to suppress the identification

testimony of the two female occupants of the Dering Road home until April 18, 2011—well over a year after appellant had been arrested and jailed—and did not file a motion to request funds to hire an expert on eyewitness identifications until November 10, 2011— nearly a year after the court appointed appellant's second defense attorney.

{¶ 32} Accordingly, we reject appellant's argument in his first assignment of error that he was denied his statutory right to a speedy trial.

{¶ 33} Appellant further argues in his first assignment of error that he was denied his constitutional right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Ohio Constitution, Article I, Section 10. *Brime* at ¶ 11. In determining whether those rights have been violated, we first consider whether the length of the delay was presumptively prejudicial. *State v. Mohamed*, 10th Dist. No 08AP-960, 2009-Ohio-6658, ¶ 22-23. If it was, we then consider and balance the four factors identified in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), i.e., length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Brime* at ¶ 11.; *Mohamed* at ¶ 21 citing *State v. Selvage*, 80 Ohio St. 3d 465 (1997) (adopting *Barker* test for purposes of Article I, Section 10 of the Ohio Constitution).

{¶ 34} In general, delay is deemed "presumptively prejudicial" as it approaches one year. *Mohamed* at ¶ 24. In this case, two and one-half years passed from appellant's arrest on December 8, 2009, until his trial, which began on June 11, 2012. We find that a delay of this length is presumptively prejudicial and that a balancing of the *Barker* factors is therefore necessary.

1. ***Length of Delay.***

{¶ 35} A delay of two and one-half years between arrest and trial is significant. But the United States Court of Appeals, Sixth Circuit, has recognized that a delay of eleven years prior to trial, while atypical, was not unconstitutional when weighed along with the other *Barker* factors. *U.S. v. Young*, 657 F.3d 408, 420 (6th Cir.2011). *See also State v. Martin*, 16 Ohio App.3d 172, 174 (10th Dist.1984) (noting that there was no constitutional speedy-trial infringement found in *Barker* where a period of more than five years intervened between Barker's arrest and his conviction). In short, we find that, although the length of the delay between appellant's arrest and trial provides some weight in favor of appellant's constitutional speedy-trial argument, it is not dispositive.

## 2. *Reason for Delay*

{¶ 36} The reason-for-delay factor "is concerned with whether the government or the defendant is more to blame for the delay." *State v. Quinnie*, 10th Dist. No. 12AP-484, 2013-Ohio-1208, ¶ 14, citing *Doggett v. United States*, 505 U.S. 647, 651 (1992). Examination of the record justifies the conclusion that, in large part, appellant or appellant's counsel was responsible for the delay between his arrest and trial.

{¶ 37} Appellant repeatedly filed pro se motions and correspondence addressed directly to the judge presiding over his case, complaining about the conduct of the prosecutors, his appointed counsel, and the court itself. As early as March 1, 2010, appellant acknowledged that he felt that his assigned counsel was not adequately defending him. On November 16, 2010, appellant asserted in open court his dissatisfaction with his first appointed counsel and repeated his belief that the state was responsible for that attorney having been chosen to defend him. He acknowledged that he had filed a disciplinary complaint against his own counsel. On that date, the court appointed new defense counsel, one of four attorneys appellant had listed as his choices to undertake his representation. Clearly, the appointment of new defense counsel nearly a year after appellant's arrest was the direct result of appellant's conduct—not that of the state, and appointment of new counsel necessarily delayed the trial.

{¶ 38} We conclude that the delay of appellant's trial was attributable in substantial part to appellant's own conduct or that of his counsel. Accordingly, the reason-for-delay factor established in *Barker* weighs heavily against appellant's assertion that he was deprived of the constitutional right to a speedy trial.

## 3. *Appellant's Assertion of Speedy-trial Right*

{¶ 39} This factor weighs in appellant's favor. He formally raised the speedy-trial issue as early as May 2010 when he had been in county jail for approximately five months and filed a pro se motion to dismiss the prosecution on speedy-trial grounds. He reasserted that right on numerous occasions.

## 4. *Prejudice to Appellant*

{¶ 40} In assessing prejudice in the context of a *Barker* analysis, we consider "the specific interests the right to a speedy trial was designed to protect: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defendant's

defense will be impaired by dimming memories and loss of exculpatory evidence." *Quinnie* at ¶ 16.

{¶ 41} "[F]acing criminal charges for an extended period of time necessarily entails some level of anxiety and concern." *Id.* A blanket statement of anxiety caused by delay is, however, insufficient to establish prejudice. *Id.*, citing *State v. Glass*, 10th Dist. No. 10AP-558, 2011-Ohio-6287. But appellant does not argue that he was prejudiced by the delay by being unable to call witnesses who were no longer available at the time of trial, or that evidence had become unavailable during the delay.

{¶ 42} Appellant does argue that he was prejudiced by the delay of his trial in that the state used audiotapes of telephone conversations he engaged in while in jail. He argues that, had the trial taken place sooner, those conversations would not have occurred and could not have been used against him. For the reasons discussed above relative to appellant's statutory right to a speedy trial, we do not find that circumstance to be of great weight in balancing the *Barker* factors.

{¶ 43} Accordingly, in balancing all of the *Barker* factors, we find that the delay in trial experienced by appellant was not unconstitutional. As did the *Young* court, we observe that "finding ways to more quickly move this case forward would have been preferable to the actual pace of proceedings." *Young* at 420. But, the reasons for the delay in trial were largely due to the conduct of appellant himself or appellant's counsel—not dilatory conduct by the state. We therefore reject appellant's argument in his first assignment of error that he was denied his constitutional right to a speedy trial.

{¶ 44} We have rejected appellant's arguments that he was denied his right to a speedy trial as provided both by Ohio's speedy-trial statute and by the state and federal Constitutions. We therefore overrule appellant's first assignment of error.

### B. Alleged Trial Court Bias

{¶ 45} In his second assignment of error, appellant argues that the trial court favored the state's counsel and was biased against defense counsel, thereby committing reversible error.

{¶ 46} In 2010, the Supreme Court of Ohio reiterated the principle that a " 'criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law.' " *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 48, quoting *State*

*v. Lamar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 34.  Judicial bias is defined as " 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge[.]' "  *Id.* at ¶ 48, quoting *State ex rel. Pratt v. Weygandt,* 164 Ohio St. 463 (1956), paragraph four of the syllabus.   The Supreme Court also recognized that " 'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' "  *Id.,* quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994).   Judicial remarks of this nature will support a challenge if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.  *Id.*   Where a reviewing court finds that a trial was infected by judicial bias, the remedy is a new trial.  *Dean* at ¶ 2.

{¶ 47} Moreover, judicial bias may exist when directed toward counsel as opposed to the defendant. *Id.* at ¶ 65.   Indeed, " 'the judge who is so hostile to a lawyer as to doom the client to defeat deprives the client of the right to an impartial tribunal.' "  *Id., quoting Walberg v. Israel*, 766 F.2d 1071, 1077 (7th Cir.1985).   But the Supreme Court of Ohio also recognized in *Dean* that "normal disputes * * * sometimes arise between counsel and the trial judge during trial," suggesting  that disputes of this nature do not necessarily justify the conclusion that the defendant was deprived thereby of a fair trial.   Rather, the determinative question is whether the judge's bias made fair judgment impossible.  *Id.* at ¶ 75.

{¶ 48} Appellant suggests that the trial judge's bias against him and his counsel is evidenced by certain statements and rulings made during the trial, *e.g.* (1) the trial court advised counsel during a sidebar conference that it was not the court's duty to instruct defense counsel on how to try a case; (2) the trial judge, again out of the presence of the jury, curtly instructed defense counsel not to touch the jury box, as that was a pet peeve of his; (3) the judge, out of the presence of the jury, chastised defense counsel for rolling his eyes at the judge; and (4) the judge, when confronted by defense counsel's protestation that the court had been treating him differently than it treated the state's counsel stated that "you want to play tough, we can play tough."  (Tr. Vol. IV, 626.)   Appellant additionally argues that the court applied different rules to the state than it did the defense in governing the procedure of the trial, *e.g.,* the court allowed the state to re-cross

twice, but only allowed defense counsel to re-cross once and allowed the state to split closing arguments between two prosecutors.

{¶ 49} We have reviewed the record and conclude that appellant's objections are in the nature of normal disputes that sometimes arise during trial and do not illustrate bias precluding the administration of a fair trial. Appellant has not set forth evidence to overcome the general presumption that a judge is fair and impartial. *In re Disqualification of Kilpatrick*, 47 Ohio St.3d 605, 606 (1989).

{¶ 50} Accordingly, we overrule appellant's second assignment of error.

### C. In-Court Identification Testimony

{¶ 51} In his third assignment of error, appellant challenges the trial court's decision to allow two of the victims, C.B. and S.D., to provide in-court identification of appellant as one of the robbers. He contends that the in-court identifications had been tainted by exposure to prior photographs of appellant.

{¶ 52} "In order to suppress identification testimony, there must be '* * * a very substantial likelihood of irreparable misidentification.' " *State v. Jells*, 53 Ohio St.3d 22, 27 (1990), quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968). " '[R]eliability is the linchpin in determining the admissibility of identification testimony.' " *State v. Hogan*, 10th Dist. No. 11AP-644, 2012-Ohio-1421, ¶ 18, quoting *Manson v. Brathwaite,* 432 U.S. 98, 114 (1977). A court, in determining reliability, must consider the totality of the circumstances. *Hogan* at ¶ 18. "It is the defendant's burden to prove that the procedures utilized were both suggestive and unnecessary *and* that the testimony was or will be unreliable based upon the totality-of-the-circumstances test." (Emphasis sic.) *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732 (10th Dist.), ¶ 41.

{¶ 53} The day after the robbery, victim C.B. contacted police, gave them a family photograph of appellant, and informed them that she believed that appellant was one of the robbers. Thereafter, the police prepared a photo array of six individuals, including appellant, who shared similar physical characteristics with appellant. In March 2009, shortly after the robbery, C.B. reviewed the photos and immediately identified the photo of appellant as the photo of one of the robbers. She stated that she was sure of the identification.

{¶ 54} Although the testimony of the victims is not entirely consistent, it appears that C.B. had shown the family photograph of appellant to the other three victims both before and after the March 2009 photo array. Police showed the other three victims the same photo array they had displayed to C.B., but none of them positively identified appellant as the robber. S.D., however, circled appellant's photo and told police that the individual in the photo resembled one of the robbers.

{¶ 55} In December 2009, police again showed photo arrays to the victims. One of the male victims, A.M., identified appellant as one of the robbers, although he later recanted that identification. C.B. was shown arrays that did not contain appellant's photo, and she did not identify any of the individuals shown as being one of the robbers. The second female victim, S.D., did identify appellant and described her identification as being "without a doubt." (Nov. 1. Tr., 52.)

{¶ 56} After considering the totality of the circumstances, we conclude that the trial court did not err in allowing both C.B. and S.D. to identify appellant in court as being one of the robbers. At trial, C.B. testified that, during the incident, she recognized one of the robbers as someone she had known. She stated that appellant was familiar to her because he had known her mother in the past and that she, C.B., when she was ten years old had been on a camping trip that appellant also attended. She testified that it was her sense of familiarity that prompted her to look through old photo albums. She further testified that she immediately recognized appellant when she first saw appellant's picture in one of the albums. Clearly, C.B. was not tainted by exposure to the photo array as she had identified appellant as one of the robbers before ever seeing the police photo array. Indeed, it was her independent identification of appellant as one of the robbers that prompted the photo array itself.

{¶ 57} Nor do the circumstances, viewed in their totality, warrant the conclusion that S.D.'s in-court identification was unreliable. It is true that C.B. acknowledged that she had told S.D. and the other victims on more than one occasion that she was convinced appellant had been one of the robbers. But S.D. testified that she was not influenced by C.B. in making her own identification. She admitted having seen one photo after the robbery but denied that it influenced her identification of appellant. She testified that she had been in close proximity—approximately 12-18 inches—to the robber for an extended

period of time during the robbery and that she specifically noted his eyes and coloring at that time. She testified that she saw a resemblance to that individual in the photo array she was shown in March 2009 but that she was not certain at that time that the person was, in fact, the robber. But, she identified appellant in the December 2009 photo array as being the robber "without a doubt." (Tr. Vol. II, 340.)

{¶ 58} We also note that the testimony of the two women was cumulative to other identification testimony. The two other individuals charged with the robbery, Keel and Moore, testified at trial that they had participated in the robbery, and both identified appellant as the third robber. Their testimony as to the events that occurred during the robbery were consistent with the victims' testimonies. In addition, Keel's wife testified that, early on the morning of March 16, 2009, she observed appellant, Keel, and Moore dividing up property, including cash and jewelry, in appellant's home. We further observe that defense counsel had a full opportunity to cross-examine both C.B. and S.D. to challenge the accuracy of their recollection and identification, and called an expert to testify as to the reliability of eyewitness identification.

{¶ 59} We therefore find that the trial court did not err in allowing C.B. and S.D. to identify appellant in court as one of the robbers who had victimized them on March 15, 2009. Accordingly, we overrule appellant's third assignment of error.

### D. Introduction of Audiotape

{¶ 60} In his fourth assignment of error, appellant argues that the trial court erred in allowing the state to play an audiotape of a conversation between appellant and his girlfriend, Cassie Siegel, that was recorded while appellant was in jail. Appellant argues that the tape included an inadmissible reference to appellant's probation violation holder and included two accusatory hearsay statements made by the girlfriend, i.e., that she could "make sure [appellant] never see[s] the light of day" and that appellant was "doing a pretty good job [himself] of being kept in jail." (Tr. Vol. V, 726.) He contends that the playing of the tape violated his right to confront witnesses against him.

{¶ 61} Pursuant to the Sixth Amendment to the U.S. Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." That right is applicable to the states through the Fourteenth Amendment to the U.S. Constitution. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-

2742. The introduction of hearsay "out-of-court statements violate[s] the Sixth Amendment when they are testimonial and the defendant has had no opportunity to cross-examine the declarant." *Id.* at ¶ 13, citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "We review a claim that a criminal defendant's rights have been violated under the Confrontation Clause de novo." *State v. Arnold*, 10th Dist. No. 07AP-789, 2008-Ohio-3471, ¶ 9.

{¶ 62} The Supreme Court of the United States has recognized that there are "circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial purposes" and is therefore not testimonial for purposes of the Confrontation Clause. *Michigan v. Bryant*, 131 S.Ct. 1143, 1155 (2011). "Where no such primary purpose exists, the admissibility of an out-of-court statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.* Accordingly, statements made "unwittingly to a Government informant" and "statements from one prisoner to another" are not testimonial for purposes of the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 825 (2006).

{¶ 63} The Third District Court of Appeals has held that audiotapes of telephone conversations in which one of the parties is incarcerated are not testimonial. In *State v. Stewart,* 3d Dist. No. 13-08-18, 2009-Ohio-3411, the court considered whether the trial court had erred in admitting jail recordings of telephone conversations of the accused's co-conspirators, including conversations with family members. The court rejected the argument that introduction of the audiotapes violated the Confrontation Clause, observing:

> We cannot find that these recorded calls are testimonial in nature. Nothing indicates that "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution," as required by *Davis [v. Washington],* 547 U.S. at 822. * * * Therefore, no Confrontation Clause violation can result.

*Id.* at ¶ 96.

{¶ 64} Moreover, several federal courts have similarly recognized that recorded telephone conversations from jail are not testimonial in nature and, therefore, do not implicate the Confrontation Clause. *Saechaeo v. Oregon*, 249 Fed.App'x 678, 679 (9th Cir.2007); *Malone v. Kramer*, E.D. Cal. No. 1:07-cv-00743 AWS SMS(HC) (Apr. 6, 2010)

(involving jail phone conversations between accused and his wife); *Ibarra v. McDonald,* N.D. Calif. No. C 10-01145 JW (PR) (Apr. 26, 2011); *U.S. v. Thurman*, 915 F. Supp.2d 836, 854 (D.C. Ky.2013).    As in the case at bar, in both *Iberra* and *Thurman*, the phone conversations occurred after an announcement that the call was subject to monitoring and recording. Although the precedent established by the Third District and these federal courts is not binding, it is persuasive.

{¶ 65} We conclude, consistent with the precedent cited above, that the trial court did not violate appellant's rights under the Sixth Amendment Confrontation Clause in allowing the jury to hear the audiotape of these conversations between appellant and his girlfriend.  The calls were not testimonial in nature.  Accordingly, we overrule appellant's fourth assignment of error.

### E. Prosecutorial Misconduct

{¶ 66} In his fifth assignment of error, appellant argues that the state engaged in prosecutorial misconduct by commenting on the girlfriend's statement that she could ensure he "never saw the light of day again," despite an earlier limiting instruction from the court that the tapes were being "played not for the truth of the of the matter asserted but as to the nature of what's going on with the conversation, and that's what you're to consider it for."  (Tr. Vol. V, 704.)

{¶ 67} During his closing argument, the prosecutor discussed the contents of a number of recorded telephone conversations between appellant and his co-defendants, as well as with his girlfriend Cassie. He addressed those phone conversations in chronological order.  The prosecutor referred to Cassie's "light of day" comment on two occasions. The first time he told the jury that, on "February 19 [appellant] calls Cassie. *Cassie is angry*.  What does she tell him?  'I can make it so you don't ever see the light of day." (Emphasis added.) (Tr. Vol. VIII, 1137.)  On the second occasion, the prosecutor stated "Cassie gets mad again.  Tells him again, reminds him, 'I can make it so you don't see the light of day,' *because she was there and knows that they did*." (Emphasis added.) (Tr. Vol. VIII, 1142.)

{¶ 68} Appellant did not object on either of these occasions and we therefore review this assignment of error using a plain-error standard. *See State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶  18 (observing that "[p]rosecutorial misconduct

allows for a reversal under the plain-error standard if it is clear that the defendant would not have been convicted in the absence of the improper conduct.").

{¶ 69}   " 'The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'  A defendant is entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant." (Citations omitted.) *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908. " 'A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found appellant guilty.' " *State v. Brooks*, 10th Dist. No. 06AP-74, 2006-Ohio-5784, ¶ 13, quoting *State v. Benge*, 75 Ohio St.3d 136, 141 (1996), citing *State v. Loza*, 71 Ohio St.3d 61, 78 (1994).

{¶ 70} The court had instructed the jury that Cassie's audiotape was being played "not for the truth of the matter asserted but as to the nature of what's going on with the conversation, and that's what you're to consider it for." (Tr. Vol. V, 704.)   The prosecutor prefaced his first quotation of Cassie's light-of-day comment by observing that "Cassie [was] angry." That commentary was consistent with the trial court's limiting instruction that the jury should consider the statement only for the purpose of understanding the context of the conversation.  It is true, however, that the prosecutor thereafter argued to the jury that Cassie's "light of day" comment supported the conclusion that Cassie knew "what they did," i.e., knew that appellant was guilty.   The prosecutor's second reference to Cassie's "light-of-day" comment went beyond the purpose for which the court allowed the taped statement to be heard by the jury.

{¶ 71}  We agree, therefore, that the prosecutor's second reference to Cassie's "light of day" comment during his closing argument exceeded the purpose for which the court allowed the tape and was therefore improper.   However, the prosecutor did not thereby engage in misconduct that substantially prejudiced appellant.  The state elicited extensive testimony from multiple witnesses that appellant was, in fact, the third robber. In light of that evidence, we find that the references to Cassie's comment made by the prosecutor in his closing argument were not crucial to the jury's verdict.   Despite appellant's challenge to the credibility of the state's witnesses, the jury chose to believe them and returned a guilty verdict. We therefore reject the conclusion that, had the

prosecutor refrained from making those references, the jury would have found appellant not guilty, and no plain error occurred.

{¶ 72}   Accordingly, we overrule appellant's fifth assignment of error.

### F. Introduction of Audiotapes

{¶ 73} In his sixth assignment of error, appellant argues that the trial court erred in allowing the state to play the redacted jail telephone recordings at trial, in that their probative value was substantially outweighed by the danger of unfair prejudice and that they were therefore inadmissible pursuant to Evid.R. 403. Appellant does not, however, identify any prejudice with specificity, instead noting that the tapes were rife with obscenities, included two references to the fact that appellant had at one point been the subject of a probation violation holder, and thereby highlighted the fact that appellant had been in jail while pending trial.

{¶ 74} Evid.R. 403(A) provides:

> **Exclusion mandatory.** Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶ 75}   "We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa,* 93 Ohio St.3d 49, 64 (2001). Thus, our inquiry is limited to determining whether the trial court acted unreasonably, arbitrarily or unconscionably in deciding the evidentiary issues. *Id.*, citing *State v. Barnes,* 94 Ohio St.3d 21, 23 (2002)." *State v. Shipley*, 10th Dist. No. 12AP-948, 2013-Ohio-4055, ¶ 56.

{¶ 76}   " 'In reaching a decision involving admissibility under Evid.R. 403(A), a trial court must engage in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect.' *State v. Steele,* 10th Dist. No. 95APA01–124 (Sept. 21, 1995). In order for the evidence to be deemed inadmissible, its probative value must be minimal and its prejudicial effect great. *State v. Morales,* 32 Ohio St.3d 252, 258 (1987)." *Shipley* at ¶ 61. But although "all evidence presented by a prosecutor is prejudicial, * * * not all evidence unfairly prejudices a defendant." *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107 (finding that relevant co-conspirator statements

were not unfairly prejudicial to the accused). "Furthermore, relevant evidence which is challenged as having probative value that is substantially outweighed by its prejudicial effects 'should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect' to the party opposing its admission. [*State v.*] *Hurt,* [10th Dist. No. 95APA06-786 (Mar. 29, 1996)], quoting *State v. Maurer,* 15 Ohio St.3d 239, 265 (1984)." *Shipley* at ¶ 61.

{¶ 77} In response to this assignment of error, the state argues that the probative value of the audiotapes substantially outweighed any danger of unfair prejudice. It notes that the calls established a clear pattern of attempts by appellant to urge his codefendants to refrain from admitting their culpability to police. The state further points out that it had recorded approximately 700 calls but proffered as evidence only the 33 most relevant. In addition, the state observes that counsel did not request that a curative instruction be given concerning the inclusion in the tapes of references to appellant as being the subject of a probation violation holder. Moreover, it argues that the detrimental effect, if any, of appellant's frequent use of curse words during appellant's phone calls does not substantially outweigh their probative value.

{¶ 78} Having reviewed the record, we agree with the state that the trial court did not abuse its discretion in allowing the 33 audiotapes to be introduced as evidence. "A trial court * * * has broad discretion to determine whether relevant evidence must be excluded in accordance with Evid.R. 403(A) because 'the exclusion of *relevant* evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place.' " (Emphasis sic.) *State v. Sowell*, 10th Dist. No. 06AP-443, 2008-Ohio-3285, ¶ 80, quoting, inter alia, *State v. Yarbrough*, 95 Ohio St.3d 277, 2002-Ohio-2126, ¶ 40 (finding that trial court did not abuse its discretion in allowing as evidence audiotaped recordings of his jail calls that included, inter alia, curse words). A primary fact in dispute in this case was whether appellant was one of the offenders participating in the March 15, 2009 robbery. The tapes at issue tended to support the state's contention that appellant was one of those offenders and were therefore relevant because they tended to corroborate the testimony of other state witnesses, including Keel and Moore, that appellant was the third robber along with them. The calls reflected appellant's deep concern that his codefendants might cooperate with

police and provide evidence against him.  In short, the probative value of the tapes was high.

{¶ 79} Appellant does not suggest how the reference to appellant's probation violation holder was unduly prejudicial other than to suggest that the tapes highlighted the fact that appellant was in jail.  However, "a comment referring to a defendant being in jail is not per se a prejudicial remark." *State v. Ellis*, 10th Dist. No. 05AP-800, 2006-Ohio 4231, ¶ 21.   See *State v. Nevins*, 171 Ohio App.3d 97, 2007-Ohio-1511 (2d Dist.),  ¶ 50 (quoting *State v. Hamilton*, 8th Dist. No. 48945 (Apr. 18, 1985) (" 'Surely a jury is not naïve and does realize the jail is a part of the criminal justice system.' "). In light of the strength of the evidence against appellant and the fleeting nature of these references, we do not find that appellant's rights were violated by the prosecution's failure to redact them from the audiotapes. Nor do find persuasive appellant's argument that the audiotapes, which reflected appellant's repeated and frequent use of words deemed by many to be offensive, effectively constituted character assassination.

{¶ 80} In short, the tapes were prejudicial but they were not unduly or unfairly prejudicial. " 'Unfair prejudice' does "not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." ' " *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 89, quoting *United States v. Bonds,* 12 F.3d 540 (6th Cir.1993). Our review of the record as a whole persuades us that the jury would not have returned a different verdict had the offensive language and the two brief references to probation violation holders been redacted from the audiotapes. In determining whether introduction of the audiotapes violated Evid.R. 403, the trial court was required to weigh the probative value of the tapes against their prejudicial effect.  The trial court did not act unreasonably, arbitrarily or unconscionably in finding that the probative value of the tapes was not substantially outweighed by the danger of any unfair prejudice, and the trial court did not abuse its discretion in allowing the jury to hear them.  We therefore overrule appellant's sixth assignment of error.

## V. Analysis—Cross-Appeal

### A. Merger

{¶ 81} In its first cross-assignment of error, the state argues that the trial court erred in merging the aggravated burglary count with the aggravated robbery and kidnapping counts. In support, the state asserts that the plurality decision of the Supreme Court of Ohio in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, does not require that merger.

{¶ 82} We have recently held that aggravated burglary and aggravated robbery are not allied offenses of similar import where the two offenses were committed through separate conduct:

> In [*State v.*] *McClurkin* [10th Dist. No. 11AP-944, 2013-Ohio-1140], the defendant entered the victim's home while carrying a knife, threatened her with the knife, repeatedly sexually assaulted her, and then stole her purse before leaving the home. *McClurkin* at ¶ 2. The defendant argued on appeal that the trial court erred by failing to merge several of his convictions, including aggravated robbery and aggravated burglary. *Id.* at ¶ 51. The court noted that aggravated burglary is committed by entering a victim's house, while aggravated robbery is committed when a defendant attempts or attempts to commit a theft offense under certain circumstances. Thus, separate conduct is required to commit each of the crimes and, therefore, they would not merge. *Id.* at ¶ 55. The facts are similar in this case. Appellant committed aggravated burglary by forcing his way into the residence. He committed aggravated robbery * * * by demanding and taking money or property from her. Thus, these offenses were committed through separate conduct and they do not merge. *See Johnson* at ¶ 51.

*State v. Broomfield,* 10th Dist. No. 12AP-469, 2013-Ohio-1676, ¶ 23.

{¶ 83} Similarly, in this case, appellant's conduct of breaking into the Dering Road property and thereafter causing significant physical harm to occupants of the home was separate from his conduct in demanding and taking property from the occupants. *Accord State v. Lewis,* 11th Dist. No. 2012-L-074, 2013-Ohio-3974, ¶ 129-33 (aggravated robbery and aggravated burglary charges did not merge when the two crimes were not based upon the exact same conduct and the physical harm element for aggravated burglary was committed by additional subsequent conduct that was not needed to prove the aggravated robbery); *State v. Overton*, 6th Dist. No. L-12-1137, 2013-Ohio-3291, ¶ 18 (merger of

aggravated robbery and aggravated burglary not required where conduct of breaking into a home was separate conduct from action in leading victim around the home in search of items to steal)[3]; *State v. Linde*, 9th Dist. No. 26714, 2013-Ohio-3503, ¶ 18 ("Since *Johnson,* numerous appellate courts have determined that aggravated robbery and aggravated burglary are not allied offenses of similar import because an aggravated burglary is complete upon an offender's forced entrance and an aggravated robbery requires additional conduct."). *See also State v. West*, 10th Dist. No. 11AP-548, 2013-Ohio-942, ¶ 22-27.

{¶ 84} Similarly, appellant's conduct in kidnapping the occupants by tying them up in the basement after having already committed both the burglary and robbery offenses was separate conduct. *Accord Broomfield* at ¶ 12.

{¶ 85} Consistent with this precedent, we therefore find that the state's first cross-assignment of error is well-taken. Accordingly, this case must be reversed for the court to resentence appellant in light of our finding that the aggravated burglary conviction does not merge with appellant's aggravated robbery conviction.

## B. Firearm Specification

{¶ 86} The jury found appellant guilty of a firearm specification as to each of the four aggravated robbery convictions and each of the four kidnapping offenses. In its second cross-assignment of error, the state argues that the trial court erred in only imposing one additional three-year sentence. It contends that the trial court was required by R.C. 2929.14(B)(1)(g)[4] to impose at least two three-year firearm specification terms.

{¶ 87} R.C. 2929.14(B) provides:

> (1)(a) Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of

---

[3] The Sixth District in *Overton* cited the following cases as also supporting the proposition that an offender's conduct establishing aggravated robbery may in particular cases be found to be separate conduct from that which establishes aggravated burglary: *State v. Smith,* 8th Dist. No. 95243, 2011-Ohio-3051, ¶ 80; *State v. O'Neil,* 11th Dist. No. 2010-P-0041, 2011-Ohio-2202, ¶ 47–49; *State v. Fears,* 86 Ohio St.3d 329, 344 (1999), citing *State v. Frazier,* 58 Ohio St.2d 253, 255 (1979); *State v. Slagle,* 65 Ohio St.3d 597, 611 (1992); *State v. DeWitt,* 2d Dist. No. 24437, 2012–Ohio–635, ¶ 33; *State v. Turner,* 2d Dist. No. 24421, 2011–Ohio–6714, ¶ 23; and *State v. England,* 6th Dist. No. L-91-065 (Feb. 28, 1992).

[4] The provision now codified as R.C. 2929.14(B) was previously codified as R.C. 2929.14(D).

the Revised Code, the court shall impose on the offender one of the following prison terms:

* * *

(ii) A prison term of three years if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense;

* * *

(g) If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, *the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted* or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

(Emphasis added.)

{¶ 88} In *Lewis,* the Eleventh District Court of Appeals decided a similar issue concerning the imposition of multiple firearm specification sentences where a defendant had been convicted of aggravated burglary, as well as two counts of aggravated robbery. The court recognized that, because aggravated robbery is one of the specific felonies listed in R.C. 2929.14(B)(1)(g), the trial court was required to follow the mandate established in that statute that a separate prison term be imposed for each of the two most serious firearm specifications. *Id.* at ¶ 100-04

{¶ 89} In this case, as in *Lewis,* appellant was convicted of firearm specifications associated with two or more felonies, at least one of which was aggravated robbery. Accordingly, pursuant to R.C. 2929.14(B)(1)(g), the trial court was required to sentence

appellant to at least two three-year firearm specification sentences. *Accord, State v. Carson*, 10th Dist. No. 11AP-809, 2012-Ohio-4501, ¶ 8-11 (finding that trial court erred in failing to apply R.C. 2929.14(D)(1)(g) to impose two three-year prison terms for firearm specifications where the defendant had been found guilty of felonious assault, an offense also specifically identified in R.C. 2929.14(D)(1)(g)).

{¶ 90} The state acknowledges that the prosecutor at trial acquiesced in the court's finding that only one three-year firearm specification should be imposed. We need not engage in a plain-error analysis, however, as we have previously held that re-sentencing in this case is required based on the trial court's error in merging appellant's aggravated burglary conviction with his aggravated robbery conviction. The trial court must, on remand and re-sentencing, correctly apply R.C. 2929.14(B)(1)(g) as provided herein.

{¶ 91} Accordingly, we sustain the state's second cross-assignment of error.

## VI. Conclusion

{¶ 92} For the foregoing reasons, we overrule all six of appellant's assignments of error, sustain both of the state's cross-assignments of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand this case for re-sentencing.

*Judgment affirmed in part and reversed in part;*
*cause remanded for re-sentencing.*

SADLER and GREY, JJ., concur.

GREY, J., retired, of the Fourth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____