[Cite as *State v. Moss*, 2020-Ohio-2862.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                        Court of Appeals No. L-19-1047

        Appellee                               Trial Court No. CR0201802137

v.

Ronald Moss, Jr.                                    **DECISION AND JUDGMENT**

        Appellant                              Decided:  May 8, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Edward R. La Rue, for appellant.

* * * *

**ZMUDA, P.J.**

{¶ 1} This matter is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, General Division, sentencing appellant Ronald Moss to an 11-year prison term after a jury trial.  Finding error in the proceedings at trial, we reverse and remand for a new trial.

## I. Facts and Procedural Background

{¶ 2} On April 18, 2018, members of the Metro Drug Task Force, in the course of surveilling Mark Belcher, a suspected trafficker, observed Belcher meet with Moss and Moss's uncle, Henry Leake. The task force is a multi-jurisdictional group that investigates drug cases, with members from local law enforcement, as well as BCI, FBI, and ATF. Initially, FBI Special Agent Kyle Fulmer was the only investigator, conducting surveillance of Belcher from an unmarked vehicle.

{¶ 3} After Belcher parked his white Land Rover in the 3200 block of Haughton Street, in Toledo, Ohio, Fulmer took a position to the south in an unmarked vehicle and called for assistance. Undercover Toledo Police Detective Kenneth DeWitt, Jr. responded, in another unmarked vehicle, and drove by to verify that Belcher was sitting in the white Land Rover. Detective DeWitt observed Moss, with a passenger, arrive and park his maroon pickup truck several car lengths ahead of Belcher's vehicle. The surveillance team observed Leake exit the passenger side of the truck and walk back to Belcher's car, then take the front passenger seat of the Land Rover. Leake stayed for several minutes, then exited Belcher's car and returned toward the pickup. As Leake returned to the pickup, Moss exited the truck and walked back to the Land Rover. Moss then sat in the front passenger seat of Belcher's car and appeared to be talking with Belcher. At first, the Task Force only knew the identity of its target, Belcher, but in the course of surveillance, officers identified both Leake and Moss, and determined the activity of the three as suspicious.

2.

{¶ 4} The task force requested assistance from a marked unit, and Toledo Police Officer Melvin Haney and his partner responded in a limited marked vehicle, an all-black vehicle with lights mounted inside and in the back. Officer Haney's vehicle was equipped with a dash camera, but the video did not record the apprehension of Moss.

{¶ 5} As Officer Haney and his partner arrived, they watched Belcher and Moss step out of the Land Rover, and Belcher tossed a plastic bag under his car. The officers retrieved the plastic bag, and it contained a substance later identified as more than 100 grams of crack and powder cocaine. Belcher had additional cocaine and heroin in a pocket, but when officers searched Moss they found no drugs. Moss had $1,468 in cash in his wallet, and a search of the pickup truck, which was registered to Moss's wife, yielded $4,000 in four, banded wads, found inside a console.

{¶ 6} All three men were taken into custody, charged, and held pending a bail hearing. While Belcher was in custody, immediately after the arrest, he made several phone calls from jail. In one call, he acknowledged to the other person on the call that "Ronnie," or Moss, was also in jail, and that "Ronnie and his Uncle," were dealing drugs at the time of his arrest.

{¶ 7} On June 25, 2018, the Lucas County Grand Jury indicted Moss on two counts, trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(g), with a major drug offender specification pursuant to R.C. 2941.1410 in Count 1; and possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f), with a major drug offender specification pursuant to R.C. 2941.1410 in Count 2. A separate forfeiture proceeding

3.

was filed in Lucas Common Pleas case No. CI 201802961, regarding the $5,468 in currency seized, and that case was later consolidated with the criminal proceeding.[1]

{¶ 8} On July 11, 2018, Moss was arraigned with appointed counsel, and entered a not guilty plea. On February 4, 2019, Moss filed a motion in limine, seeking to prohibit evidence from "a jail phone call from an individual who will not be testifying in the instant case and is clearly hearsay under Evid.R. 802."

{¶ 9} On February 5, 2019, jury trial commenced, and the trial court overruled Moss's objections to the jail phone call, finding the recording of Belcher's conversation was admissible as a business record. The state played the recording for the jury over Moss's renewed objections. The jury also heard testimony of Detective DeWitt and Officer Haney, with Detective DeWitt narrating the events captured on the dashcam video and opining on the significance of the events depicted. In addition, Natalie Montecalvo, a Lucas County Sheriff's Resource Officer, testified regarding the system used to monitor and record jail calls, and introduced a copy of the calls. Finally, the state presented expert testimony of Chadwyck Douglass, a Toledo Police criminalist who analyzed the drugs seized on April 18, 2018.

{¶ 10} At the close of the state's case, Moss made a Crim.R. 29 motion, which the trial court denied. Moss's wife, Jaknae Moss, testified on his behalf regarding the cash discovered and seized from Moss's wallet and from the truck console, indicating it was

---

[1] On March 25, 2019, after the appeal of the criminal judgment, the trial court stayed the forfeiture proceedings.

4.

part of funds given to her by an uncle to purchase a home, or it was casino winnings from the week before.

{¶ 11} During deliberations, the jury sent out questions, relayed by the trial court as follows:

Ladies and Gentlemen, we have received several questions as it relates to your deliberations and it's very difficult to answer some of the questions.

So the first question is just if the console in the truck was locked, would unlocking of the console be – by an officer constitute and illegal search of the vehicle?

Whether the console was locked or not, that particular question on the search would be a legal issue to be determined by the court and would have no bearing on what the jury does.

The second question is define clearly possession as it applies to this case. The term "possession," the legal definition is in your jury instructions. And I am not allowed to ad lib on what those instructions are, which also applies to three, define "complicit" as it relates to this case.

Again, the term "complicit," the legal definition may be somewhat confusing, but I can't elaborate on that definition as well, so I cannot answer that.

5.

The fourth one, could we listen to – again to the recorded call and view once again the video? We have that set up, so we're going to play it for you and I'll have Mr. McDonald play each of those so you can see them again. Neither of the attorneys will be allowed to say anything.

{¶ 12} The prosecutor replayed the dashcam video and selections of the jail calls for the jury, and the jury returned to its deliberations. Soon after, the jury found Moss guilty on both counts, and entered a finding that Moss was a major drug offender as to each count. The trial court proceeded to sentencing, and found the two counts merged for purposes of sentencing. As to Count 1, the trial court imposed an 11-year prison term, and found Moss had the ability to pay costs of assigned counsel and prosecution. Moss filed a timely appeal.

## II. Assignment of Error

{¶ 13} Moss now challenges his conviction, arguing the following assignments of error:

1. The trial court erred by admitting into evidence the recorded jail telephone calls of the hearsay statements of Mark Belcher.

2. The trial court erred by admitting into evidence expert witness testimony under the guise of lay witness testimony without the State having filed an expert witness report as required under Ohio Rule of Criminal Procedure 16(K).

6.

3. The trial court erred by finding that the evidence was sufficient to convict Mr. Moss of drug trafficking and drug possession.

4. Appellants' convictions for drug trafficking and drug possession were against the manifest weight of the evidence, in violation of Article IV, Section 3, of the Ohio Constitution.

### III. Analysis

{¶ 14} In his first and second assignments of error, Moss challenges the admission of evidence, arguing the trial court erred in admitting the jail call recording of Belcher's statements, as inadmissible hearsay, and erred in permitting expert testimony by a lay witness. We review a trial court's ruling on evidentiary issues for an abuse of discretion that resulted in material prejudice. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 181, citing *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 116.[2]

{¶ 15} Moss first challenges the admission of Belcher's jail call recordings, over his objection, as inadmissible hearsay. Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Appellee, the state

---

[2] We note that hearsay challenges implicating the Confrontation Clause are reviewed de novo, under the applicable hearsay rule. *State v. McKelton*, 149 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97. While Moss raised his Sixth Amendment rights before the trial court, Moss does not challenges the trial court's ruling on appeal as implicating the Confrontation Clause, arguing instead that Belcher's statements are nontestimonial hearsay, improperly admitted at trial.

7.

of Ohio, argues that Moss failed to object and raise this exact issue before the trial court, and thus waived all but plain error.

{¶ 16} Moss filed a motion in limine in the trial court, arguing Belcher's statements were inadmissible hearsay, not subject to cross-examination to test the credibility of the declarant. The parties then argued the motion before the trial court, with the prosecution's position as follows:

> Mr. McDonald: The State is seeking to introduce a jail phone call placed hours after the arrest on April 18th of Mark Belcher who is a charged defendant, though charged federally, not here in state court, and is not a codefendant in this case.
>
> The call states in pertinent part – and I would only be attempting to play two little snippets – one, that there's an acknowledgement that Ronnie is in jail too. Obviously, our defendant's name is Ronald. Then Mr. Belcher makes a statement that says he came bringing me you know what it is, you know what it was, he gives me this shit, his uncle was there, he discusses some dispute about the quantity or the type of drug that it is. And then says he goes and talks to dude, being Ronald, and then that's when the police swooped in, as well as a statement where he says he was jammed up with Ronnie and his uncle. Someone is asking who were you caught with in the background. Someone is yelling who's the drug dealer and he says Ronnie and his uncle.

8.

The State is seeking to introduce this jail phone [call] under two theories. The first is it's a business record exception to hearsay, so the State argues that any hearsay contained in the phone call, there's an exception which is the business record. There's been an [argument] that this would be in violation of the confrontation clause.

However, the State has provided authority to this court including a previous ruling made in 2016, a 2016 case by this court[3] as well as *State v. Stewart*, 2009 Ohio 3411, as well as several federal cases, and *State v. Dennison,* 2013 Ohio 5535, which all stand for and hold that jail phone calls made are nontestimonial. Therefore, in no violation of the confrontation clause and thus alleviating any *Bruton* issues.

The State is seeking to introduce those two snippets based on the authority provided to the court as well as precedent from this building. And thank you, judge.

---

[3] The state did not provide the citation to this 2016 case on the record, but the trial court did reference a 2016 ruling in denying the motion in limine, naming the codefendants, Davonte Nicholson and Alexander Williams. There were appeals filed by Davonte Nicholson and Alexander Williams, codefendants in Lucas Common Pleas case No. CR0201602818. In *State v. Nicholson*, 6th Dist. Lucas No. L-17-1187, 2018-Ohio-4909 and *State v. Williams*, 6th Dist. Lucas No. L-17-1186, 2019-Ohio-2657, neither appellant challenged the admissibility of witness testimony regarding a phone call from Williams. The witness called Williams, her drug dealer, to notify Williams of the victim's whereabouts, and agreed to detain the victim at that location. After the murder, Williams called the witness and told her that the killing was done and if she said anything, Williams would "get" her too.

In response, Moss's trial counsel supplemented argument in the motion in limine, noting the case law deemed persuasive by the trial court, and stressing the danger of prejudice in admitting Belcher's statements.

> Mr. Luettke: Judge, I would argue that the statement that Mr. Belcher makes is mentioning Ronnie is an – it's an accusatory statement. I – if the court sees that the jailhouse calls are a business record, which obviously the case law is leaning towards, I would argue that it's highly prejudicial, under 403(A) that it be excluded, because the danger far outweighs the probative value of it. The police conducted a limited investigation. They moved in quickly. They have the evidence they have. I know Mr. Belcher was begging to get out on a bond and then this phone call and I'm certain shifting the blame because he wanted his folks to go post his bond and it's not me, it's all Ronnie.
>
> I think the dangers of misleading the jury far outweighs the probative value of admitting the call.

{¶ 17} In reaching a determination regarding the recordings, the trial court noted its own prior ruling in a separate case, stating:

> Court: Well, in addition to the references made by the State, there was a case in 2016 that the court handled with Davonte Nicholson and Alexander Williams which were codefendants in a murder case and I was

the trial judge at the time and there was a similar issue raised regarding some jail calls at that time.

And the court reluctantly admitted the phone calls based on some of the case law that Mr. McDonald has just referred to. And the case law that's been developed in Ohio and federally has indicated that jail calls are nontestimonial.

I don't necessarily agree with that, but because of the case law that has been developed regarding jail calls, the court is going to allow the State to play a limited portion of that section as it relates to any reference to the defendant in this case.

The trial court denied the motion in limine, but specifically noted defense counsel's objection at the time of denying the motion, immediately prior to the state's introduction of the recording into evidence, and again, prior to replaying the recording during the jury's deliberations.

{¶ 18} To preserve an issue for appeal, the objection at trial must apprise a trial court of the specific argument. (Citations omitted.) *State v. Ruble*, 2017-Ohio-7259, 96 N.E.3d 792, ¶ 38 (4th Dist.). Contrary to the state's position, Moss preserved his appellate challenge. Indeed, we are hard-pressed to find a more thorough preservation of an issue, considering the objection asserted and noted at each stage of trial. Moss raised the issue of hearsay, both before the trial court and on appeal, arguing the inapplicability

11.

of the business record exception to Belcher's out-of-court statements, as well as the prejudice posed by those statements.

{¶ 19} In considering the argument, the trial court indicated a reluctance to admit the jail calls, but determined case law dictated that such calls were nontestimonial, and therefore admissible, without addressing the issue of hearsay. The authority considered by the trial court, however, does not stand for the proposition that jail calls are nontestimonial and, therefore, admissible regardless of content.

{¶ 20} First, in *State v. Dennison*, the Tenth District Court of Appeals considered the admissibility of a defendant's own, recorded statements, finding the probative value of the defendant's statements outweighed the prejudice of the jury hearing his offensive language and brief references to his incarceration. *Dennison*, 10th Dist. Franklin No. 12AP-718, 2013-Ohio-5535, ¶ 80. In *Dennison*, the recorded statements were defendant's own, offered against him at trial, and not hearsay under Evid.R. 801(D)(2). The trial court, furthermore, weighed the potential prejudice prior to admitting the recordings.

{¶ 21} In *State v. Stewart*, the Third District considered the admissibility of video and audio recordings of persons who did not testify, including recordings of jail calls by the defendant's co-conspirators. In that case, the defendant argued admission of the recorded statements violated his right to confront witnesses, under the Sixth Amendment, but raised no other challenge based on hearsay. The content of the statements included talk of Stewart "cornering the market," Stewart's own admission that he was hiding while

12.

police conducted a search of a residence, and Stewart and a codefendant discussing their belief they could not be charged if they were not listed on the lease. Based on the content of these recordings, the court determined the statements were not testimonial in nature, as no statements related to past events "potentially relevant to later criminal prosecution."[4] *Stewart*, 3d Dist. Seneca No. 13-08-18, 2009-Ohio-3411, ¶ 96. Unlike the facts in *Stewart*, Moss argues Belcher's recorded statements were improperly admitted hearsay, resulting in prejudice.

{¶ 22} Unlike the courts in *Dennison* and *Stewart*, the trial court, in this case, did not consider the content of the jail calls before determining that Belcher's statements were admissible because the statements were nontestimonial. While it is true that nontestimonial hearsay does not implicate the confrontation clause of the Sixth Amendment, courts must still address the separate, hearsay issue. *See, e.g., State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 16, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Regardless of any Confrontation Clause concerns, hearsay statements are not admissible unless they fall within an exception to the rule. *See* Evid.R. 802.

---

[4] While we note that the statements in the present case *did* address past events "potentially relevant to later criminal prosecution" and the state used these statements as an evidentiary substitute to sustain a conviction, Moss argues the Belcher statements were nontestimonial. Consideration of the nature of the statements, as testimonial or nontestimonial, is not before us on appeal.

13.

{¶ 23} Here, the prosecutor introduced out-of-court statements that included Belcher's response to the question, "who is the drug dealer?" Belcher's statements indicated Moss and his uncle were the drug dealers, the exact issue on trial. We agree with Moss that such statements fit the definition of hearsay, as an out-of-court statement, offered "to prove the truth of the matter asserted." *See* Evid.R. 801(C). The state acknowledged the Belcher statements as hearsay, but argued they were nevertheless admissible as business records.

{¶ 24} Pursuant to Evid.R. 803(6), a business record is defined as:

A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

{¶ 25} In arguing admissibility under Evid.R. 803(6), the state focuses on the reliability of the recording methods, noting authority that supports authentication of jail recordings involving *a party*. *See State v. George*, 8th Dist. Cuyahoga No. 106317, 2018-Ohio-5156 (jail call recordings admissible where defendant and her incarcerated

14.

boyfriend discussed and planned the crimes, with testimony demonstrating accurate recording of the conversations); *State v. Nixon*, 11th Dist. Portage No. 2013-P-0098, 2014-Ohio-4303 (jail calls recordings of the defendant's own statements properly authenticated and admitted). Here, however, the jail call recording is of a *non-party*, and while the state presented testimony to ensure the accuracy of the recording of that non-party's voice, the trial court failed to articulate any consideration of Moss's objections to the trustworthiness of that non-party's statements, contained within the recording.

{¶ 26} In *State v. Eicholtz*, the Second District Court of Appeals compared the requirements for authentication of a recording versus trustworthiness of the contents of a recording, as it related to 911 calls. *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 31. In drawing a distinction between accurate recording and the reliability of the content, that court found the "business records" argument unpersuasive, for purposes of admissibility of recorded, non-party statements, noting:

> "The theory underlying the business records exception to hearsay set forth in Evid.R. 803(6) is that records kept in the regular course of business are ordinarily accurate with respect to the purposes for which they are kept. Thus, it is reasonable to suppose that [a] 911 taping system accurately recorded [a declarant's] statements. * * * The 911 tape recording system can reasonably be expected to generate an accurate record of what is said by persons calling 911, but it cannot vouch for the accuracy of the statements made by persons calling 911."

15.

*Eicholtz* at ¶ 31, fn. 5, quoting *State v. Johnson*, 2d Dist. Montgomery No. 15253, 1996 WL 200623, *4 (Apr. 26, 1996).

{¶ 27} We find the same underlying theory applies in this case, where the recording admitted contained double hearsay. While the state clearly demonstrated the jail's taping system accurately recorded Belcher's statements to others, accusing Moss of being the drug dealer, the integrity of that system in no way ensured that Belcher's statements were truthful or reliable. This is the exact reliability argument asserted by Moss on appeal, which the state wholly fails to address, characterizing Moss's authority as pertaining strictly to hearsay issues in civil suits, and not to jail phone calls in a criminal trial.

{¶ 28} While Moss cites to no criminal cases involving jail calls, the state relies on authority pertaining to jail calls that do not address the reliability issue before us. We have previously considered this issue, however, concerning reliability and double hearsay in criminal trials. In *State v. Reynolds*, we considered admissibility of medical records that included victim statements, and noted a recording and the statements within that recording each constituted an out-of-court statement, offered to prove the truth of the matter asserted. *See State v. Reynolds*, 6th Dist. Lucas No. L-16-1080, 2018-Ohio-40, ¶ 49, *appeal not allowed*, 152 Ohio St.3d 1467, 2018-Ohio-1795, 97 N.E.3d 502. Pursuant to Evid.R. 805, a court must consider admissibility as to each part of the combined statements. *Id.*

16.

{¶ 29} In *Reynolds*, we found the medical record admissible under the business records exception of Evid.R. 803(6). *Id.* at ¶ 51. Much of the victim statements, however, did not fall within an exception to the rule prohibiting hearsay, as the statements were not "made for purposes of medical diagnosis or treatment" as provided under Evid.R. 803(4). *Id.* at ¶ 52; ¶ 57. While we found error in the admission of these statements, however, we determined the impact of the statement negligible, and deemed the error harmless. *Reynolds* at ¶ 55-57.

{¶ 30} The First District Court of Appeals performed a similar "hearsay within hearsay" analysis concerning text messages in a criminal trial. In *State v. Hinkston*, 1st Dist. Hamilton No. C-140448, 2015-Ohio-3851, the state introduced text messages retrieved from a cell phone taken from the defendant. The court determined the record of the cell phone account fell within the business record exception to hearsay, under Evid.R. 803(6). *Hinkston* at ¶ 17. The court further found that the content of the messages were either not hearsay, as messages sent by the defendant, Evid.R. 801(D)(1), or not offered for the truth of the matter asserted, Evid.R. 801(C). *Id.*

{¶ 31} In this case, despite the hearsay objections raised by Moss, the state did not present any basis for admitting the hearsay within hearsay before the trial court, relying on the business records exception and distinguishable, inapplicable case law. Now, on appeal, the state argues that the double hearsay was admissible based on the business records exception, without addressing the independent basis for admission of the statements, or based on Belcher's unavailability, stating the record is clear "that in the

17.

trial court the state argued that the jail phone calls would meet the 804(B)(3) unavailable witness hearsay exception." We note, however, that the state cites to nothing in the record to support this claim, demonstrating the state made any reasonable attempt to secure Belcher's live testimony at trial as required under Evid.R. 804(B), prior to any "unavailable" determination. *See, e.g., State v. Blakely*, 6th Dist. Lucas No. L-03-1275, 2006-Ohio-185, ¶ 24 (witness not considered unavailable "unless the prosecution had made reasonable efforts in good faith to secure his presence at trial" and the proffered statement bore "sufficient indicia of reliability.") (Citations omitted.)

{¶ 32} Upon review of the record, we find the trial court erred in admitting Belcher's statements, as hearsay within hearsay, with nothing to indicate "each part of the combined statements" was admissible under "an exception to the hearsay rule" as required under Evid.R. 805. Finding error, we must next determine whether the improperly admitted hearsay constitutes prejudicial error. *State v. Kirk*, 6th Dist. Huron No. H-09-006, 2010-Ohio-2006, ¶ 18, citing *State v. Smith*, 64 Ohio App.3d 383, 387, 581 N.E.2d 1107 (6th Dist.1989).

{¶ 33} Generally, "error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction," and "in such cases there must be overwhelming evidence of the accused's guilt or some other indicia that the error did not contribute to the conviction." (Citations omitted.) *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987).

18.

Considering the record in this case, there is a strong possibility that admission of Belcher's statements secured the conviction, and therefore, the error was not harmless.

{¶ 34} In this case, the prosecutor highlighted Belcher's statements as persuasive, substantive evidence in proving Moss was the drug dealer. In addition to playing the statements for the jury during trial, the prosecutor featured Belcher's remarks in closing argument, noting the federal investigation of Belcher for drug trafficking and Belcher's version of what happened the date of the arrest for possession and trafficking. The prosecutor then replayed the recorded statements, over the objection of Moss's trial counsel, interjecting comment and highlighting how important Belcher's statements were to the case.

Mr. McDonald: Okay. Now when we listen to this call – and I'll play it a couple times for you because it's important. Let's set the context up where Mr. Luettke says in his closing argument that that can't be trusted because it's not under oath. Again, who cares? Who cares? He's talking to his friends, family. Obviously someone familiar with Mr. Belcher. He is telling them what happened the day that it happened. This recording is from 4/18. * * *

This is hours after it happened and he's talking, Mark Belcher now is talking to friends or family, somebody who cares about him and he's telling them what happened. If that's not indicative of truthfulness, more so than an oath in a courtroom, I don't know what is. This is a phone call he made

the day he gets arrested to his friends and family explaining what happened. And he's going to fib about that? I don't think so.

And when we listen to this, it's important to listen to what is said. The female on the recording says Ronnie is in jail too. He says I know. Listen to how Belcher's voice changes when he's discussing – he gets quiet. He's saying, hey, look, he came bringing me, he came bringing me, you know he know what it was. Well, okay. Here he came bringing me, right. Ronnie's in jail too. I know. He came bringing me.

You know what it was. Right. And we know it was cocaine. Bringing cocaine.

Four thousand dollars, in his car. Listen to it.

(Recording played for the court and the jury)

Mr. McDonald: He come bringing me. He come bringing me. You know what it was, right.

(Resume playing recording)

Mr. McDonald: He – he gives me the shit. His uncle was in there.

(Resume playing recording)

Mr. McDonald: He says like what is this? Right? Wrong quantitation.

(Resume playing recording)

Mr. McDonald:  Okay.  So he walks out and dude comes back to the car which is exactly what the surveillance showed, right?  He's talking about Henry Leake comes in and he says, okay, what's this.  I can't cut that up.  And Leake goes back to the car and we know this happens because of the surveillance.  We know that Leake comes back to the car and then we know that Ronald Moss goes back to the car.  Why?  Why are these behaviors happening on a street in Toledo in the middle of the afternoon?  This is why.  Money.  Ronnie is in jail too.  I know.  And he explains the whole scenario, exactly corroborating what the detective testified to happened.  Leake takes the drugs, he came, he came bringing the drugs to the car, exchange was made and he's like, hey, man, I can't work with this.  Go send Ron because we've got to talk about this and so Ron goes to the car and that's what happens.  And that's the way he explained it, almost identically the way the detective explained the surveillance.

(Resumes playing recording)

Mr. McDonald:  Did you hear it, the sound like a child in the background?  The dope dealer.  Right.  Let's try that one more time.

(Resumes playing recording.)

Mr. McDonald:  Going to play it through for a second.

(Resumes playing recording.)

Mr. McDonald: See, they're talking in code. What's dude name, that she's trying to get his name, right?

(Resumes playing recording.)

Mr. McDonald: I mean it's right there. He says who's your co-defendant? I don't have a co-defendant. I don't know who that – the dope dealer. Oh, the guy I got jammed up with, oh, it was Ronnie and his uncle. The dope dealer.

In the midst of deliberations, the jurors requested a replay of the recording, and the trial court permitted the prosecutor to play the recording once more for the jurors.

{¶ 35} Clearly, the prosecution relied on Belcher's statements in demonstrating Moss was "the dope dealer." The prosecution played the recording during trial and again during closing arguments. The prosecutor provided running commentary during his closing argument, interpreting and explaining Belcher's words when he spoke in "code." The jurors, moreover, demonstrated interest in this hearsay by asking to hear the statements once more during deliberation. When we compare this hearsay to the totality of the evidence presented at trial, we find a strong possibility that Belcher's statements contributed to the guilty verdicts. Therefore, the trial court's error in admitting this hearsay was prejudicial. We find Moss's first assignment of error well-taken.

{¶ 36} In his second assignment of error, Moss argues the state introduced improper testimony by permitting Detective DeWitt to opine on matters he did not observe. While we review a trial court's decision regarding admission of evidence for an

22.

abuse of discretion, Moss did not raise any objection to this testimony during trial, waiving all but plain error. *State v. McClain*, 6th Dist. Lucas No. L-10-1088, 2012-Ohio-5264, ¶ 12; *see also State v. McKee*, 91 Ohio St.3d 292, 294, 744 N.E.2d 737 (2001). To find plain error we must determine that, "but for the error, the outcome of the trial clearly would have been otherwise." *McKee* at 294, citing Crim.R. 52(B); *State v. Johnson*, 88 Ohio St.3d 95, 111, 723 N.E.2d 1054 (2000).

{¶ 37} Procedurally, this issue is not moot, despite our finding of reversible error regarding the hearsay statements of Belcher. An issue is moot where resolution of the assigned error "is purely academic and will have no practical effect on the legal relations between the parties." *State ex rel. Renwand v. Huron Cty. Bd. of Commrs.*, 6th Dist. Huron No. H-09-011, 2010-Ohio-1477, ¶ 25, quoting *Wagner v. City of Cleveland*, 62 Ohio App.3d 8, 13, 574 N.E.2d 533 (8th Dist.1988). As our reversal based on trial error results in a new trial, we address all evidentiary issues raised.

{¶ 38} Moss objects to Detective DeWitt's opinion testimony concerning events he did not personally witness, explaining events depicted on the dashcam video and stating his belief that Moss brokered a drug deal without any testimony that he observed an exchange of drugs and money. A police officer may offer opinion, consistent with the officer's perception, training, and experience. *McClain* at ¶ 13. Opinion testimony regarding "an ultimate issue to be decided by the trier of fact," moreover, may be admissible at trial. *See* Evid.R. 704.

23.

{¶ 39} Here, Detective DeWitt explained the events of the date in question, based on his participation in the surveillance and apprehension of Belcher, Leake and Moss. His testimony, moreover, was limited to matters within his experience and observations, as established through his testimony, detailing his training, education, and years of experience in law enforcement. Furthermore, Detective DeWitt's testimony was typical officer testimony regularly admitted at trial. *See, e.g., McClain* at ¶ 13 (Officer properly opined that quantity of drugs indicated sale and not personal use); *State v. Blair*, 2016-Ohio-2872, 63 N.E.3d 798 (4th Dist.) (police could refute defense theory that another individual killed the victim, opining on that individual's poor physical strength and uninjured hands, where victim was struck with fists.); *State v. Parker*, 2d Dist. Montgomery No. 18926, 2002-Ohio-3920, ¶ 53 (experienced detective properly opined that the wounds appeared to be gunshot wounds). Accordingly, we find no error that rises to the level of plain error regarding Detective DeWitt's testimony, and Moss's second assignment of error is not well-taken.

{¶ 40} In his remaining assignments of error, Moss challenges both the sufficiency and weight of the evidence. Because we sustained Moss's first assignment of error, his manifest-weight argument raised in his fourth assignment of error is moot. The sufficiency argument, however, is not moot, as reversal based on improper evidence requires a retrial, while reversal based on insufficient evidence bars a retrial. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 NE.2d 541 (1997), citing *Tibbs v. Florida*, 457 U.S. 31, 47, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). *See also State v. Flannery*, 1st Dist.

Hamilton No. C-140426, 2015-Ohio-1360, ¶ 15 (where new trial granted based on error in admission of evidence, sufficiency analysis must still be addressed).

{¶ 41} In considering the sufficiency of the evidence, we consider all the evidence presented at trial. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 18. We conduct our sufficiency determination apart from the review of improper hearsay, or ordinary "trial error," as sufficiency is a test of the state's case against Moss, while the hearsay determination relates only to a defect in the proceeding itself. *Id.*, citing *Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), quoting *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Because the state properly relies on a trial court's evidentiary rulings in deciding how to present its case, a sufficiency review must include a review of all the evidence presented at trial. *Brewer* at ¶ 19. To proceed otherwise would place the onus on the state to "assume every ruling by the trial court on the evidence to be erroneous and marshall and offer every bit of relevant and competent evidence[,]" a standard that is impractical and adverse to the administration of justice. (Citations omitted.) *Id.*

{¶ 42} Here, the jury convicted Moss of trafficking and possession of more than 100 grams of cocaine. The state's theory of the case was that Moss and Leake sold the drugs to Belcher for $4,000. In reviewing the sufficiency of the evidence, the test is not whether the evidence is worthy of belief, but whether, if a jury finds the evidence credible, that evidence would support a conviction as to each element of the offense charged. (Citations omitted.) *State v. Shelby*, 135 N.E.3d 508, 2019, Ohio-1564, ¶ 18

25.

(6th Dist.). The sufficiency determination presents a question of law. *Id.*, citing *Thompkins* at 386.

{¶ 43} To sustain a conviction for trafficking as charged, the evidence must demonstrate that Moss knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed "a controlled substance or a controlled substance analog," with knowledge or a reasonable belief that "the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2).

{¶ 44} To sustain a conviction for possession as charged, the evidence must demonstrate that Moss knowingly obtained, possessed, or used "a controlled substance or a controlled substance analog." R.C. 2925.11(A). "Possession of drugs may be actual or constructive." *State v. Steed*, 75 N.E.3d 816, 2016-Ohio-8088, ¶ 55 (6th Dist.), citing *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). Constructive possession, shown by an exercise of control of an object, may be "inferred from a totality of the evidence where sufficient evidence, in addition to proximity," supports that finding. *Id.*, citing *State v. Durr*, 6th Dist. Sandusky No. S-97-056, 2000 WL 1033033, *4 (July 28, 2000).

{¶ 45} In addition to the drug charges, the jury also determined the major drug offender specification, pursuant to R.C. 2941.1410, applied to Moss. A "major drug offender" includes a person convicted of possessing or selling "at least one hundred grams of cocaine[.]" R.C. 2929.01(W).

26.

{¶ 46} In challenging the sufficiency of the evidence, Moss does not challenge the amount of cocaine, instead arguing there was no direct evidence demonstrating he physically possessed or sold the drugs and there was no testimony that officers observed Leake place the $4,000 in the pickup truck's center console. Even if no witness observed a physical exchange of drugs and money, however, "circumstantial evidence can have the same probative value as direct evidence." *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991), citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

{¶ 47} Here, Belcher implicated Moss as the dealer who sold him drugs, with a street value of around $4,000. At the time, Belcher was under surveillance by the multi-jurisdictional Task Force as a known drug trafficker. The testimony indicated over 100 grams of crack and powder cocaine near Belcher's vehicle and $4,000 in Moss's pickup console, banded in a manner consistent with drug trafficking. Additionally, Moss carried almost $1,500 in his wallet, kept in his pocket.

{¶ 48} Officers observed Leake walk from Moss's pickup truck to Belcher's vehicle, sit in the passenger seat, and then return to the pickup, followed by Moss walking from his pickup to Belcher's vehicle and sit in the passenger seat. Shortly thereafter, officers observed Belcher throw a bag of drugs under the vehicle, apparently to avoid detection. While Moss argues that Leake did not access the pickup after his return from Belcher's vehicle, and did not place the $4,000 in the console, the only evidence elicited as to Leake indicated the Task Force was watching Belcher, and Leake

27.

stayed "at the side of the pickup." Finally, Detective DeWitt indicated the console containing $4,000 was unlocked, and while defense counsel attempted to discredit testimony regarding the cash by arguing the console was locked and the cash belonged to Jaknae Moss, the test for sufficiency is merely adequacy. *Thompkins,* 78 Ohio St.3d at 386, 678 N.E. 2d 541.

{¶ 49} Having thoroughly reviewed the record, we find the state met its burden of production and presented sufficient evidence as to each element of the charged offenses. Therefore, while we reverse based on prejudicial error in permitting the introduction of inadmissible hearsay, we find Moss's third assignment of error not well-taken, and Moss is merely entitled to a new trial, and not acquittal.

## IV. Conclusion

{¶ 50} Finding substantial justice has not been done, we hereby reverse the judgment of the Lucas County Common Pleas Court, General Division, and remand the matter for a new trial. Appellee is assessed the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                   _____
                                                            JUDGE

Christine E. Mayle, J. 

Gene A. Zmuda, P.J.                                   _____
CONCUR.                                                              JUDGE

                                                       _____
                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.